**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KATHLEEN REGINA MAESTAS,

       Plaintiff,

v.                                  No. CV 17-679 CG

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
Social Security Administration,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      **THIS MATTER** is before the Court on Plaintiff Kathleen Regina Maestas' *Motion To Reverse And Remand For Payment of Benefits, Or In The Alternative, For Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 17), filed January 10, 2018; Defendant Deputy Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed March 1, 2018; and Ms. Maestas' *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* (the "Reply"), (Doc. 20), filed March 22, 2018.

      Ms. Maestas filed applications for supplemental security income and disability insurance benefits on May 8, 2013, alleging disability beginning August 20, 2012. (Administrative Record "AR" 18). She later amended her disability onset date to March 11, 2013. (AR 18, 256). Ms. Maestas claimed she was limited in her ability to work due to: chronic hypoxemia, multiple pulmonary emboli, clotting disorder, severe iron deficiency, menorrhagia, massive obesity, dyspnea, menometrorrhagia, pulmonary hypertension, asthma, and obstructive sleep apnea. (AR 326). Ms. Maestas'

applications were denied initially on March 17, 2014, and upon reconsideration on July 10, 2014. (AR 18). Ms. Maestas requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 6, 2016, before ALJ Lawrence T. Ragona. (AR 43). Ms. Maestas, her mother Maria Maestas, and Vocational Expert ("VE") Leonard Francois, testified at the hearing, and Ms. Maestas was represented by attorney Patricia Glazek. (AR 45-118).

On February 25, 2016, the ALJ issued his decision, finding that Ms. Maestas was disabled under the Social Security Act from March 11, 2013, through August 19, 2014, but her disability ended on August 20, 2014. (AR 35). Ms. Maestas requested review by the Appeals Council, (AR 252), which was denied, (AR 2-4), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Maestas, who is now represented by attorney Francesca MacDowell, challenges the ALJ's finding that she was no longer disabled as of August 20, 2014. (Doc. 17). Ms. Maestas argues in her Motion that the ALJ: (1) did not properly weigh the medical opinions of Cynthia Comly, M.D., John G. Lang, Ph.D., and Tracey Garcia, Licensed Independent Social Worker; (2) failed to properly consider whether Ms. Maestas' physical and mental limitations improved; (3) erred in assessing Ms. Maestas' credibility; and (4) improperly adopted the VE's testimony. *Id.* at 6-24. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of the opinions of Dr. Comly, Dr. Lang, and Ms. Garcia, the Court finds that Ms. Maestas' Motion should be **GRANTED**.

## I.      Standard of Review

The standard that courts apply in reviewing the Commissioner's decision is the same regardless of whether the issue is termination of benefits or the initial denial of benefits. *See Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits ("DIB") and supplemental security income ("SSI"), a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or

equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable

to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-

iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ

determines the claimant cannot engage in past relevant work, the ALJ will proceed to

step five of the evaluation process. At step five the Commissioner must show the

claimant is able to perform other work in the national economy, considering the

claimant's residual functional capacity ("RFC"), age, education, and work experience.

*Grogan*, 399 F.3d at 1261

Using this five-step sequential evaluation procedure, the ALJ found that Ms.

Maestas was disabled for a closed period from March 11, 2013, through August 19,

2014. (AR 18-20). Next, the ALJ determined that Ms. Maestas' disability ended as of

August 20, 2014. Benefits may be terminated on the basis of a finding that the physical

or mental impairment on which the benefits are provided "has ceased, does not exist, or

is not disabling." 42 U.S.C. § 423(f)(1). This finding must be supported by substantial

evidence which demonstrates that there has been a medical improvement and the

claimant is now able to engage in substantial gainful activity. *Id*. The burden in

termination cases rests with the Commissioner at each step. *See Hayden v. Barnhart*,

374 F.3d 986, 988, 990-91 (10th Cir. 2004).

The termination of benefits review process consists of eight steps for DIB and

seven steps for SSI. 20 C.F.R. § 404.1594(f)(1)-(8); 20 C.F.R. § 416.994(b)(5)(i)-(vii).

Whether the claimant is engaging in substantial gainful activity is not considered for

purposes of continued SSI eligibility, otherwise the steps are identical for both DIB and

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

SSI. *Compare* 20 C.F.R. § 404.1594(f)(1)-(8) (DIB review - eight steps), *with* 20 C.F.R. § 416.994(b)(5)(i-vii) (SSI review - seven steps). The remaining steps are as follows:

1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?

2) If not, has there been medical improvement?[2]

3) If there has been medical improvement, does the improvement relate to the claimant's ability to do work, *i.e.*, has there been an increase in the claimant's RFC based on the impairment(s) present on the date of the most recent favorable medical determination?

4) If there has been no medical improvement, or if such improvement is not related to claimant's ability to work, do any of the exceptions to medical improvement apply? *See* 20 C.F.R. §§ 404.1594(d)-(e), 416.994(b)(3)-(4) (list of the applicable exceptions).

5) If there is medical improvement related to the claimant's ability to work, are the claimant's current impairments severe when considered in combination?

6) If the claimant's impairments are severe, does the claimant retain the ability to perform his or her past relevant work?

7) If the claimant's impairments are severe and the claimant cannot perform his or her past relevant work, does the claimant nevertheless possess the RFC to perform other work?

---

[2] Medical improvement under the regulations is defined as: "Any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." 20 C.F.R. §§ 1594(b)(1), 416.994(b)(5)(ii).

### III.    Background

Ms. Maestas claimed she was limited in her ability to work due to: chronic

hypoxemia, multiple pulmonary emboli, clotting disorder, severe iron deficiency,

menorrhagia, massive obesity, dyspnea, menometrorrhagia, pulmonary hypertension,

asthma, and obstructive sleep apnea. (AR 326). At step one, the ALJ determined Ms.

Maestas had not engaged in substantial gainful activity since March 11, 2013, the

alleged onset date. (AR 22). At step two, the ALJ found that from March 11, 2013

through August 19, 2014, Ms. Maestas had the following severe impairments: anemia,

thrombocytopenia, post-traumatic stress disorder, and depression. *Id.* At step three, the

ALJ determined that during this same time period, Ms. Maestas' anemia met the criteria

of Listing 7.18 (repeated complications of hematological disorders) of 20 C.F.R. §§

404.1520(d), 404.1525, 416.920(d), and 416.925. (AR 23-25). Therefore, the ALJ found

that Ms. Maestas was under a disability from March 11, 2013 through August 19, 2014

(the "disability time period"). (AR 25).

Next, the ALJ considered the time period starting August 20, 2014, using the

SEP for termination of benefits. The ALJ stated that Ms. Maestas has the same severe

impairments as she did during the disability time period; anemia, thrombocytopenia,

post-traumatic stress disorder, and depression. *Id.* The ALJ determined that after

August 20, 2014, none of Ms. Maestas' severe impairments, solely or in combination,

equaled one of the listed impairments in 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).

(AR 26-28). The ALJ next found that medical improvement occurred as of August 20,

2014, because, in July 2014, Ms. Maestas underwent successful surgery for an

endometrial ablation with concurrent tubal ligation, and that after this surgery her blood

loss was reduced and her iron deficiency anemia was generally treated with medication. (AR 28). The ALJ also found that the medical improvement is related to Ms. Maestas' ability to work. *Id.* In making this finding, the ALJ determined that, beginning on August 20, 2014, Ms. Maestas has the RFC to perform sedentary work with the following limitations: she can lift and carry up to 10 pounds frequently and 5 pounds occasionally; she can stand and/or walk for two hours in an eight-hour workday; she can sit for six hours in an eight-hour workday; and she can never be exposed to pulmonary irritants. *Id.* In addition, the ALJ found that Ms. Maestas "cannot have complex instructions, but can perform detailed instructions, and she can occasionally interact with the general public." *Id.*

In formulating Ms. Maestas' RFC, the ALJ found that Ms. Maestas' statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. *Id.* The ALJ stated that, after August 20, 2014, treatment for Ms. Maestas' physical impairments consisted almost entirely of routine treatment and medication refills, that her blood iron level was noted as normal, she no longer needed daytime oxygen, and she sought only minimal treatment for thrombocytopenia. (AR 29).

Turning to the medical evidence in the record pertaining to Ms. Maestas' mental impairments, the ALJ gave little weight to the February 3, 2015, and December 15, 2015, opinions of Dr. Comly because Dr. Comly did not consider Ms. Maestas' ability to perform work other than in her previous place of employment, and the opinions do not adequately consider Ms. Maestas' conservative treatment for her impairments. (AR 30-31). The ALJ also gave little weight to Dr. Comly's November 11, 2014, opinion that Ms. Maestas could not return to work at the sedentary level because Dr. Comly did not

provide reasoning for the opinion, and the opinion is not supported by the record,
including Ms. Maestas' conservative treatment for her impairments. (AR 31).

Next, the ALJ gave little weight to the March 13, 2015, opinion of Dr. Lang,
because it was based on a one-time meeting with Ms. Maestas and did not adequately
consider the conservative treatment for her mental health impairments. *Id.* The ALJ also
gave little weight to Dr. Lang's December 17, 2015, opinion that Ms. Maestas would
miss more than four days of work per month because Ms. Maestas did not miss bi-
weekly and weekly appointments with Dr. Lang, and because the opinion is not
consistent with the conservative treatment Ms. Maestas received. (AR 31-32).

In addition, the ALJ gave no weight to the opinion of Susan V. Reyes-Torres,
Licensed Master Social Worker, because she just gave a description of Ms. Maestas'
mental impairments at that time, and did not consider future treatment. (AR 30). Finally,
the ALJ gave little weight to the opinion of Ms. Garcia because her findings are not
consistent with Ms. Maestas' conservative treatment, and because the record does not
support a finding that Ms. Maestas had significant struggles around the general public.
(AR 32).

Having found that Ms. Maestas' medical improvement related to her ability to
work, the ALJ next determined that Ms. Maestas is unable to perform any of her past
relevant work. *Id.* Reaching the final step of the termination of benefits SEP, the ALJ
noted that, since August 20, 2014, Ms. Maestas has been "a younger individual, age 18-
44," in accordance with the Social Security regulations, and that she has at least a high
school education and is able to communicate in English. (AR 33). The ALJ also noted
the VE testified at the hearing that an individual with Ms. Maestas' same age, education,

work experience, and RFC as of August 20, 2014, could perform the jobs of document specialist, data entry, and information clerk. (AR 33-34). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the VE's testimony and concluded that, beginning August 20, 2014, Ms. Maestas has been capable of performing work existing in significant numbers in the national economy. (AR 34). Therefore, the ALJ found that Ms. Maestas was disabled from March 11, 2013 through August 19, 2014, and that her disability ended August 20, 2014, pursuant to 20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(vii). *Id.*

## IV.    Analysis

### A.   *The ALJ's Consideration of Medical Opinion Evidence*

Ms. Maestas first contends that the ALJ erred in making his RFC determination because he failed to properly weigh the medical opinions of Dr. Comly, Dr. Lang, and Ms. Garcia. (Doc. 17 at 6-14). In response, the Commissioner contends that the ALJ's evaluation of these medical source opinions is supported by substantial evidence and the ALJ's RFC determination reasonably accounted for all of Plaintiff's credible work-related limitations. (Doc. 19 at 7-15).

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "treating sources" are generally entitled to more weight than other sources, given their treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Accordingly, ALJs must follow a particular, two-step process when evaluating and weighing opinions from treating sources. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). First, the ALJ must decide whether the treating source's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "are not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In deciding how much weight to give a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the

weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188 at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Finally, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

1.   _Dr. Comly's Opinions_

Ms. Maestas contends the ALJ improperly weighed and considered the opinions of Ms. Maestas' treating physician, Dr. Comly. (Doc. 17 at 6-8). Specifically, she argues the ALJ failed to give legitimate reasons for rejecting Dr. Comly's November 11, 2014, and December 15, 2015, opinions because evidence in the record supports Dr. Comly's opinions, and the ALJ failed to rely on any evidence contradicting them. _Id._

In response, the Commissioner contends the ALJ reasonably rejected portions of Dr. Comly's opinions by noting that Dr. Comly did not provide details of the extent Ms. Maestas' abilities had decreased and did not give a reason why Ms. Maestas could not return to sedentary work. (Doc. 19 at 11-12). The Commissioner further states the ALJ properly relied on Ms. Maestas' conservative treatment for his decision to discount Dr. Comly's opinions. _Id._ at 12. In addition, the Commissioner contends the ALJ did not err by failing to cite to contrary evidence because the ALJ adequately summarized the medical records earlier in the decision. _Id._ at 13.

In reply, Ms. Maestas contends the ALJ's statement that Ms. Maestas received conservative treatment is not adequate support for his decision to reject Dr. Comly's opinions. (Doc. 20 at 2). Ms. Maestas states that neither the ALJ nor the Commissioner has defined conservative treatment, and that evidence in the record supports Dr. Comly's findings. _Id._ Therefore, Ms. Maestas argues the ALJ failed to provide adequate support for rejecting Dr. Comly's opinions.

Dr. Comly treated Ms. Maestas from 2014 through 2015. (Doc. 17 at 6). On November 11, 2014, she diagnosed Ms. Maestas with PTSD, depression, and anxiety. (AR 2122). She opined that Ms. Maestas was limited in her ability to work based on:

high anxiety and anger, tearfulness, a propensity to avoid others, decreased concentration, and a decreased ability to complete complex tasks. (AR 2122-23). She also opined that Ms. Maestas could not return to work at a sedentary level. (AR 2123).

On December 15, 2015, Dr. Comly prepared a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)," in which she opined that Ms. Maestas either had no ability to meet competitive standards, or had no useful ability to function, in every category for "Mental Abilities and Aptitudes Needed to do Unskilled Work." (AR 2237-38).[3] Specifically, Dr. Comly opined that Ms. Maestas had no useful ability to: maintain attention for two-hour segments; maintain regular attendance and be punctual; complete a normal workday and workweek; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; respond appropriately to changes in a routine work setting; deal with normal work stress; interact appropriately with the general public; and travel in unfamiliar places. (AR 2237-38). Dr. Comly also opined that Ms. Maestas would miss more than four days of work per month. (AR 2238).

The ALJ stated he gave little weight to Dr. Comly's November 11, 2014, and December 15, 2015, opinions because: Dr. Comly did not detail the extent to which Ms. Maestas' abilities have decreased; she did not provide reasoning for her finding that Ms. Maestas could not return to work at the sedentary level; the December 15, 2015 form "appears to have been completed as an accommodation to" Ms. Maestas, and does not

---

[3] The form provides the following series of choices to choose from in assessing a claimant's mental abilities: (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited; (4) unable to meet competitive standards; and (5) no useful ability to function. "Unable to meet competitive standards" is defined as the claimant having "noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." "No useful ability to function" is defined as "an extreme limitation" wherein the claimant cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting." (AR 2237).

provide a rationale for her conclusions; and because Dr. Comly's opinions are not supported by the record, including Ms. Maestas' conservative treatment for her physical and mental impairments. (AR 31).

First, the Court agrees with the Commissioner that the ALJ did not err in rejecting Dr. Comly's opinion that Ms. Maestas could not return to sedentary work, as Dr. Comly did not make any findings regarding Ms. Maestas' physical abilities that would support that opinion. However, the ALJ's statement that Dr. Comly did not detail the extent to which Ms. Maestas' abilities have decreased, and that she failed to provide rationale for her findings, is not supported by the record with regard to Ms. Maestas' mental limitations. To the contrary, Dr. Comly's records include numerous findings supporting her opinions of Ms. Maestas' mental limitations, such as diagnoses for PTSD, anxiety disorder, and depressive disorder; referrals for counseling; prescriptions for various medications for her mental impairments, including increasing the dosages; and notations of tearfulness and distress at appointments. *See* (AR 2259, 2263-64, 2266-67, 2269-70, 2274-75, and 2279-80). In addition, the ALJ accepted several of Dr. Comly's opinions, such as that Ms. Maestas is unable to return to her previous occupation, is unable to perform work at the medium or above exertional levels, and has decreased abilities to concentrate and complete complex tasks. The ALJ's failure to explain why he found that some of Dr. Comly's opinions were properly supported, but others were not, is legal error. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.

2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Next, the Court considers the ALJ's statement that the form containing Dr. Comly's December 15, 2015 opinions appears to have been completed as an accommodation to Ms. Maestas. In rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) (explaining that an ALJ's rejection of a medical opinion based on a supposition that the doctor was advocating for his patient "is not a good reason to reject his opinion"). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.* Here, the ALJ provides no support for this conclusion, and the Commissioner acknowledges that this statement "may have been conclusory." (Doc. 19 at 13). Therefore, the Court finds that this statement is an inadequate reason for rejecting Dr. Comly's opinions.

Finally, the Court considers the ALJ's rejection of some of Dr. Comly's opinions because they are not supported by the record. While this is a facially valid reason for rejecting a medical source opinion, the ALJ is required to support this statement with evidence from the record. *See Langley*, 373 F.3d at 1122-23 (explaining that an ALJ's reasoning is not sufficiently specific if he merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation). Here, the ALJ states Dr. Comly's opinions are inconsistent with her conservative treatment. (AR 31). While the ALJ does not explain what he means by "conservative treatment," earlier in his decision he states that Ms. Maestas was treated conservatively with medication, regular

office visits, and coping techniques, and that her counseling and medications were "unmodified." (AR 29). However, Ms. Maestas' treating doctors and counselor do not assess her treatment as "conservative," and the ALJ does not cite to any evidence in the record that contradicts Dr. Comly's findings. Moreover, the ALJ does not discuss Dr. Comly's treatment notes documenting increased tearfulness and anxiety, (AR 2259, 2266-67), and increases in her dosage for Zoloft, with no improvement in her mood (AR 2274-75). Nor does the ALJ discuss the findings of both Dr. Lang and Ms. Garcia, who found similar limitations in Ms. Maestas' mental abilities. *See* (AR 2239-42) (Dr. Lang's findings that Ms. Maestas is limited in her abilities to pay attention and concentrate, has memory impairments, is hypersensitive to constructive criticism, and would miss more than four days of work per month); and (AR 2133-34) (Ms. Garcia's findings that Ms. Maestas is limited in her abilities to concentrate, maintain regular attendance and be punctual, work with others, make simple work-related decisions, complete a workday, perform at a consistent pace, work appropriately with co-workers and supervisors, and deal with normal work stress). Therefore, the Court finds the ALJ's rejection of Dr. Comly's opinions without citing contradictory medical evidence, is legal error. *See* *McGoffin*, 288 F.3d at 1252 ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

## 2. *Dr. Lang's Opinions*

Ms. Maestas next contends the ALJ improperly weighed and considered the opinions of her treating psychologist, Dr. Lang. (Doc. 17 at 9-10). Ms. Maestas states

that the ALJ's reasons for rejecting Dr. Lang's opinions are invalid and are not supported by the evidence in the record. *Id.* In response, the Commissioner argues the ALJ reasonably rejected portions of Dr. Lang's opinions because Dr. Lang did not consider Ms. Maestas' conservative treatment for her mental impairments, and because Dr. Lang's findings were not supported by the record. (Doc. 19 at 13-14). In reply, Ms. Maestas disputes that the ALJ properly supported the weight he gave Dr. Lang's opinions, and that the ALJ failed to cite to any evidence in the record that contradicts Dr. Lang's findings. (Doc. 20 at 4-5).

On March 13, 2015, Dr. Lang conducted an initial interview and mental status examination of Ms. Maestas. (AR 2125-26). He found she was struggling with the effects of trauma from losing her job and from a near-death health experience, and that her attention, concentration, freedom from distractibility, and cognitive functions were reduced. (AR 2125). Dr. Lang subsequently conducted ten psychotherapy sessions with Ms. Maestas. On December 17, 2015, Dr. Lang stated he had diagnosed Ms. Maestas with major depressive disorder, PTSD, anxiety disorder, disturbance due to multiple medical conditions, and somatic disorder. (AR 2239). Also on that date, Dr. Lang prepared a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)," in which he opined that Ms. Maestas either had no ability to meet competitive standards, or had no useful ability to function, in every category for "Mental Abilities and Aptitudes Needed to do Unskilled Work." (AR 2241-42). Specifically, Dr. Lang opined that Ms. Maestas had no useful ability to: maintain attention for two-hour segments; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek; perform at a consistent pace;

accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; and respond appropriately to changes in a routine work setting; deal with work stress; and travel in unfamiliar places. *Id.* Dr. Lang stated Ms. Maestas was distractible, hypersensitive to criticism, has mood changes resulting in poor judgment and reasoning, and he opined that Ms. Maestas would miss more than four days of work per month. (AR 2242).

The ALJ stated he gave little weight to Dr. Lang's March 13, 2015, opinions because Dr. Lang did not conduct a function-by-function assessment, the evaluation was based on a one-time meeting with Ms. Maestas, and Dr. Lang did not consider the conservative treatment Ms. Maestas was receiving. (AR 31). The ALJ also gave little weight to Dr. Lang's December 17, 2015, opinions, stating again that the form appears to have been completed as an accommodation to Ms. Maestas, and that there is only minimal rationale for Dr. Lang's conclusions. *Id.* In addition, the ALJ stated that Dr. Lang's opinion that Ms. Maestas would miss more than four days of work per month is not supported by the record because Ms. Maestas did not miss bi-weekly to weekly appointments. (AR 32). Finally, the ALJ stated that Dr. Lang's opinions were not consistent with Ms. Maestas' conservative treatment, and that the record does not show that Ms. Maestas reported that her medications caused side effects. *Id.*

Regarding Dr. Lang's March 13, 2015, opinions, the ALJ's consideration of the fact that they were based on a one-time meeting is proper under 20 C.F.R. §§ 404.1527(c) and 416.927(c). Nevertheless, the ALJ must also consider the other "deference factors," including the degree to which Dr. Lang's opinions are supported by the record. Neither the ALJ nor the Commissioner explain why Dr. Lang's failure to

provide a function-by-function assessment is adequate support for rejecting his opinions. In addition, as explained above, the ALJ's statement that Dr. Lang's opinions are not consistent with Ms. Maestas' "conservative treatment" is not an adequate reason for rejecting the opinions. The ALJ again fails to define what constitutes "conservative treatment," and does not consider that Dr. Lang's findings are consistent with his own treatment notes, (AR 2244-54), as well as with Dr. Comly's and Ms. Garcia's opinions, (AR 2122-23, 2237-38, 2133-34).

Turning to the ALJ's consideration of Dr. Lang's December 17, 2015, opinions, the Court again finds that the ALJ's statement that the form containing Dr. Lang's opinions appears to have been completed as an accommodation to Ms. Maestas is conclusory and not supported by the record. The ALJ also stated he rejected Dr. Lang's opinion that Ms. Maestas would miss more than four days of work per month because Ms. Maestas did not miss her bi-weekly to weekly appointments. (AR 31). The ALJ, however, fails to explain how attending one or two appointments a week is comparable with being able to work 40 hours a week without an unreasonable number of absences. Moreover, both Dr. Comly and Ms. Garcia also opined that Ms. Maestas would miss more than four days of work per month. As with the ALJ's consideration of Dr. Comly's opinions, the ALJ's rejection of Dr. Lang's opinions without discussing the evidence that supports them is legal error. Therefore, the Court finds that the ALJ did not provide sufficient support for rejecting Dr. Lang's opinions.

### 3. *Ms. Garcia's Opinions*

Next, Ms. Maestas contends the ALJ did not provide adequate support for rejecting the opinions of Ms. Garcia, who treated Ms. Maestas from 2014 through mid-

2015 for anxiety and emotional eating habits. (Doc. 17 at 10-14). Ms. Maestas contends that, as with the opinions of Dr. Comly and Dr. Lang, the ALJ's assignment of little weight to Ms. Garcia's opinions is contrary to law and is not supported by evidence in the record. *Id.* at 13-14. The Commissioner responds that the ALJ reasonably rejected Ms. Garcia's opinions because she gave minimal rationale for her conclusions, and because Ms. Garcia's findings were not consistent with treatment records showing Ms. Maestas' mental impairments were treated conservatively. (Doc. 19 at 14-15).

On August 24, 2015, Ms. Garcia prepared a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)," in which she opined that Ms. Maestas either had no ability to meet competitive standards, or had no useful ability to function, in most of the categories for "Mental Abilities and Aptitudes Needed to do Unskilled Work." (AR 2133-34). Specifically, Ms. Garcia opined that Ms. Maestas had no useful ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and that Ms. Maestas was unable to meet competitive standards in the following categories: maintain attention for two-hour segments; maintain regular attendance and be punctual; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers; respond appropriately to changes in a routine work setting; deal with normal work stress; maintain socially appropriate behavior; and travel in unfamiliar places. *Id.* Ms. Garcia also opined that Ms. Maestas would miss more than four days of work per month. (AR 2134).

The ALJ stated he gave little weight to Ms. Garcia's opinions because the form appears to have been completed as an accommodation to Ms. Maestas, there is limited rationale for Ms. Garcia's conclusions, and the opinions were not consistent with Ms. Maestas' conservative treatment. (AR 32). As the Court has explained above, the ALJ's statement that the form containing Ms. Garcia's opinions appears to have been completed as an accommodation to Ms. Maestas is conclusory and not supported by the record.

In addition, the ALJ's finding that Ms. Garcia did not provide rationale for her findings is not supported by the record. Instead, Ms. Garcia's treatment notes document findings of depressed and anxious moods, mood-related withdrawal from people and activities, tearfulness, low self-esteem, anger, stress, memory loss, nightmares, fear of the future, dull affect, excessive and unrealistic guilt, and that Ms. Maestas was "easily irritated." (AR 1890-1914, 2135-53, 2174-98, 2200-01). The ALJ's failure to discuss this was legal error.

Finally, as discussed above, the ALJ's statement that Ms. Garcia's opinions are not consistent with Ms. Maestas' "conservative treatment" is not an adequate reason for rejecting the opinions, and the ALJ fails to discuss that Ms. Garcia's findings are consistent with Ms. Garcia's own treatment notes, and with Dr. Comly's and Dr. Lang's findings. Therefore, the Court finds that the ALJ did not provide sufficient support for rejecting Ms. Garcia's opinions. The Court does not address Ms. Maestas' remaining claims because those may become moot upon remand.

B. *Ms. Maestas' Request for Payment of Benefits*

Ms. Maestas asks the Court to reverse and remand for payment of benefits because, in termination cases, benefits must be reinstated upon a finding that the termination of benefits was improper. (Doc. 17 at 25) (citing *Hayden v. Barnhart*, 374 F.3d 986, 994 (10th Cir. 2004)). The Commissioner does not address the holding in *Hayden*, but states that reversal is not warranted because Ms. Maestas "has not overwhelmingly established disability." (Doc. 19 at 20, n.6) (citing *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989), and *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). In her Reply, Ms. Maestas renews her request that the Court reverse for payment of benefits. (Doc. 20 at 10).

The Tenth Circuit has explained that remanding a termination of benefits decision means that the ALJ's decision to terminate benefits "is vacated and is no longer in effect," and that "[c]ontinued benefits are payable pending a new decision by the agency." *Hayden*, 374 F.3d at 994 (quoting 20 C.F.R. § 404.1597a(i)(6)). Therefore, a claimant "who has already been adjudged to be disabled by the Commissioner, maintains her disability status and is entitled to payment of any benefits that have been withheld during the appeals process." *Id.* Further, "[i]t is up to the agency to decide whether to begin new termination proceedings." *Id.*

Here, the ALJ found Ms. Maestas was disabled from March 11, 2013 through August 19, 2014, and then engaged in the termination of benefits process and determined that her disability ended on August 20, 2014. (AR 25). Because the Court finds the ALJ erred in his decision to terminate Ms. Maestas' disability benefits, Ms. Maestas is entitled to payment of the benefits that she would have received as a

disabled individual from the date on which those benefits ceased. *See McCleave v. Colvin*, No. CIV-12-0881-F, 2013 WL 4840477, at * (W.D. Okla., Sept. 10, 203) (unpublished) (applying the holding in *Hayden* in a "closed-period" case, and reversing and remanding to the Commissioner for reinstatement and payment of continuing benefits). The cases cited by the Commissioner in response to Ms. Maestas' request for reinstatement of her benefits are inapposite because they do not involve termination of benefits cases. Therefore, the Court agrees with Ms. Maestas that she is entitled to payment of the benefits that she would have received from August 20, 2014, the date those benefits ceased.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Comly, Dr. Lang, and Ms. Garcia. The Court further finds that this case should be reversed and remanded to the Commissioner for reinstatement of benefits that have been withheld during the appeals process.

**IT IS THEREFORE ORDERED** that Ms. Maestas' *Motion To Reverse And Remand For Payment of Benefits, Or In The Alternative, For Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner to terminate Ms. Maestas' benefits be **REVERSED**, and that this case be **REMANDED** to the Commissioner for reinstatement and payment of continuing benefits.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE